# EXHIBIT 1

SUPREME COURT-STATE OF NEW YORK
SHORT FORM ORDER
Present:

>    HON. TIMOTHY S. DRISCOLL
>    Justice Supreme Court

-----------------------------------------------------------------------x    TRIAL/IAS PART: 20
RAPUZZI PALUMBO & ROSENBERGER, P.C.,                                          NASSAU COUNTY

                                    Plaintiff,                                Index No: 021415-10
                                                                             Motion Seq. No. 1
                   -against-                                                 Submission Date: 5/2/11

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY, GEICO CASUALTY CO.,
BARRY I. LEVY, RIVKIN RADLER LLP, TERESA
SPINA, SETH INGALL and ANDREA BRADLEY,

                                    Defendants.
-----------------------------------------------------------------------x

The following papers having been read on this motion:

   Notice of Motion, Affirmation in Support and Exhibits..............................x
   Affidavit in Support...........................................................................x
   Memorandum of Law in Support.........................................................x
   Affidavit in Opposition and Exhibits....................................................x
   Memorandum of Law in Opposition.....................................................x
   Affirmation of R. Friedman.................................................................x
   Reply Affidavit in Support and Exhibits................................................x
   Reply Affidavit in Support and Exhibits................................................x
   Reply Memorandum of Law.................................................................x
   Correspondence dated May 17, 2011.....................................................x


   This matter is before the Court for decision on the motion filed by Defendants

Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance

Company, GEICO Casualty Co. (collectively "GEICO Defendants"), Seth Ingall ("Ingall"),

Andrea Bradley ("Bradley"), Theresa Spina ("Spina"), Rivkin Radler LLP ("Rivkin"), and Barry

I. Levy ("Levy") (all collectively "Defendants") on February 14, 2011 and submitted on

1

May 2, 2011. For the reasons set forth below, the Court grants Defendants' motion and dismisses the Amended Complaint in its entirety.

## BACKGROUND

A. Relief Sought

Defendants move for an Order, pursuant to CPLR §§ 3211(a)(1) and (a)(7), dismissing the Amended Complaint ("Complaint") in its entirety.

Plaintiff opposes Defendants' motion.

B. The Parties' History

Plaintiff Rapuzzi, Palumbo & Rosenberger, P.C. ("RPR" or "Plaintiff") is a Long Island-based law firm that principally represents both medical service providers and durable medical equipment providers in collecting monies that are purportedly due from automobile insurers under New York's No-Fault Laws.

The GEICO Defendants are insurance companies that, *inter alia*, issue policies of automobile insurance in the State of New York. Defendants Ingall and Bradley are employees of GEICO, and Defendant Spina is staff counsel to GEICO. The GEICO Companies, Spina, Ingall and Bradley are adverse parties to RPR's clients in arbitrations and litigation commenced by RPR to collect on bills for medical services and/or durable medical equipment that GEICO contends it is not required to pay. Defendants Rivkin and Levy serve as outside counsel to GEICO in litigation, involving, *inter alia*, actions seeking the recovery of money on No-Fault billing matters.

In 2010, Rivkin, on behalf of GEICO, filed two separate actions in the United States District Court for the Eastern District of New York ("Federal Actions"). One of the Federal Actions, bearing Civil Action No. 10-CV-2671, is titled *Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. v. Michael D. Green, M.D., Clifford Beinart, M.D., Vista Medical Diagnostic Imaging, P.C., Total Global Medical P.C., Imaging Associates of Five Boroughs, L.L.C., Five County Imaging Holdings, L.L.C., Asaf Yeddayev, Rapuzzi, Palumbo & Rosenberger, P.C. Patricia Rapuzzi and Danny Montanez* ("Green Action"). The other Federal Action, bearing Civil Action No. 10-CV-4287, is entitled *Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. v. One of the Best, Inc., Natela Pinkhasov, Marlon Osorio, GNK Medical Supply, Inc.,*

2

*Yakov Aminov, Provvedere, Inc., John Does "1" and "2", Ser Sano, Inc., John Doe "3", John Doe Companies "1" through "10" and Rapuzzi, Palumbo & Rosenberger, P.C.* (the "One Best" Action). The complaints in the Federal Actions ("Federal Complaints") assert claims against RPR for its role in connection with a scheme to bill and sue GEICO for payment in connection with allegedly fraudulent claims under New York's No-Fault laws.

The Green Action seeks to "terminate an ongoing fraudulent scheme perpetrated against GEICO and the New York automobile insurance industry by physicians... non-physicians, management companies owned by the non-physicians, and lawyers who work in conjunction with the non-physicians and management companies" (Green Action Complaint, Ex. B to Mulè Aff. in Supp., at ¶ 1). The One Best Action seeks to "recover more than $225,000 that [the named defendants] wrongfully have stolen from GEICO by submitting, and causing to be submitted, fraudulent claims seeking payment for durable medical equipment and orthotic devices...[which goods] purportedly were provided to individuals...who were involved in automobile accidents and were eligible for insurance coverage under GEICO insurance policies" (One Best Action Complaint, Ex. C to Mulè Aff. in Supp., at ¶ 1).

In the Green Action, GEICO alleged, *inter alia,* that RPR had filed hundreds of duplicative complaints against GEICO. The Green Complaint annexed an exhibit containing a chart of the duplicative filings made by RPR and identified different venues and different or slightly different names under which those complaints were filed. Specifically, the chart reflected that RPR brought 274 lawsuits for 127 claims. In one such lawsuit, titled *Vista Medical Diagnostic Imaging P.C. dba Vista Diagnostic Imaging, Assignee of Oscar Paredes v. GEICO,* Bronx Civil Court Index Number 119776/08, the Honorable Diane A. Lebedeff issued an Order (Ex. F to Mulè Aff. in Supp.), entered on September 25, 2009, in which she granted GEICO's application to discontinue certain duplicative actions and directed the plaintiffs to pay costs of $150.00 per case.

In the Green Action, GEICO alleged that in 2008, RPR fraudulently submitted bills directly to GEICO purportedly on behalf of Total Global Medical, P.C. ("Total Global") and Vista Medical Diagnostic Imaging, P.C. ("Vista"), and attached examples of those bills. In addition, GEICO alleged that RPR's attorney, Rapuzzi, fraudulently signed verifications, also purportedly on behalf of Total Global and Vista. The allegations were based on testimony by the listed owners of Total Global and Vista, Drs. Beinart and Green, that they never hired, and did not recall retaining, RPR

3

and never met with any attorney from RPR.

The Green Complaint also alleged that RPR served discovery responses purportedly verified by Drs. Beinart and Green, but those doctors testified that they never signed the documents that RPR submitted. Moreover, Total Global and Vista agreed to the entry of a Permanent Injunction and Order, which was signed by United States District Court Judge Sandra Townes and entered on October 25, 2010. In that Permanent Injunction and Order (Ex. J to Mulè Aff. in Supp.), Total Global and Vista agreed, *inter alia*, to discontinue with prejudice all actions against GEICO.

With respect to the One Best Action, the crux of GEICO's claims is that RPR, on behalf of its alleged clients, knowingly omitted any meaningful information including the manufacturer, make and model of the durable medical equipment and orthotic devices, in an effort to conceal that the equipment was of low quality, that the charges were far in excess of the "maximum permissible amounts" under the regulatory scheme (One Best Compl. at ¶ 43), or that the invoices were for devices that were never supplied. The One Best Complaint further alleged that given the relatively small amounts involved in each of the lawsuits, RPR expected that by routinely filing expensive and time consuming lawsuits against GEICO and verifying that the allegations were not frivolous, and that the action was not obtained through illegal conduct, it would induce GEICO to pay charges that RPR knew were fraudulent, particularly in light of GEICO's statutorily-imposed time constraints on the processing of claims. These Federal Actions form the predicate for RPR's instant suit against GEICO and Rivkin Radler.

In the action before the Court ("Instant Action"), RPR submits that GEICO and its counsel have "'conspired to use the legal system as a means to an end – the embarrassment and ruin of RPR" in retaliation for having commenced an action in December of 2008 to enforce the terms of a settlement agreement that had originally been instigated by GEICO (Fazio Aff. in Opp. at ¶11, p. 5).

Plaintiff maintains that RPR and the Defendants once enjoyed a professional working relationship which, over the course of time, soured to the point where the Defendants began to make threats about bringing about RPR's demise. Plaintiff submits that the Instant Action arises out of "[D]efendants' adoption of a course of malevolent conduct with the sole purpose of harming Plaintiff and driving them out of business" (Fazio Aff. in Opp. at ¶13). Plaintiff alleges that, in furtherance of this scheme to destroy the reputation, revenue and relationships of RPR,

4

Defendants have 1) fraudulently induced RPR to seek out representation of certain clients only to thereafter falsely name RPR as a racketeer controlling those clients; 2) attempted to intervene in the professional relationship between RPR and its clients; 3) knowingly asserted false claims against RPR, specifically the Green and One Best Complaints; and 4) then published those fabrications with the sole intent of harming RPR. Plaintiff concedes that the Amended Complaint in the Instant Action is based on the "specific knowing false allegations" contained in the Green and One Best Complaints (Fazio Aff. in Opp. at ¶15).

Plaintiff also allege that the Defendants, in particular Levy and Rivkin, acting on their own or on the behalf of the other Defendants, "published their knowing falsehoods and spurious allegations to the United States District Court for the Eastern District of New York and the Court's personnel and clerk on June 11, 2010 and again on September 21, 2010" and that "[s]hortly thereafter, the Defendants published their false statements to RPR's clients who were named as co-defendants in either the Green Suit or the One Best Suit, respectively" (Fazio Aff. in Opp. at ¶ 16). Plaintiff also alleges that Defendants "publicized their own false statements against RPR in the form of press releases sent to, among others, *Newsday* and *The Wall Street Journal*" thereby causing the false allegations to spread to the internet "leaving a permanent stain on RPR's name that is displayed when any basic internet search is undertaken" (*id.* at ¶¶ 16-17). Plaintiff submits that, "despite Defendants' naked assertions of privilege..., Defendants' malicious and malevolent course of conduct does not bootstrap immunity because they filed suit nor do 'sham' lawsuits provide protection to sham litigants" (*id.* at ¶18).

The Complaint alleges ten causes of action: 1) tortious interference with business relationships; 2) tortious interference with prospective business relationships; 3) prima facie tort; 4) abuse of process; 5) common law fraud; 6) slander/libel per se; 7) extortion; 8) deceit and collusion under Judiciary Law § 487 (only against Defendants Spina, Levy and Rivkin); (9) restraint of trade under General Business Law § 340 (Donnelly Act) (only against the GEICO Defendants); and 10) attorneys' fees under General Business Law § 340(5) (only against the GEICO Defendants) .

### C.  The Parties Positions

Defendants submit that dismissal of the Complaint is warranted on the grounds that 1) statements made by the Defendants in the Federal Actions are constitutionally protected under the *Noerr-Pennington* Doctrine and, therefore, the first through fifth, and eighth through tenth causes of action, which are predicated on allegations made by Defendants in the Federal Actions, are not viable; 2) the first through fifth, ninth and tenth causes of action must be dismissed because statements made by Defendants in the Federal Actions are privileged under New York Law which provides that statements made in the course of a judicial proceeding are absolutely privileged; 3) the sixth cause of action, alleging defamation based on the dissemination of the Federal Complaints to the press, must be dismissed because New York Civil Rights Law § 74 protects the publication of a fair and true report of any judicial proceeding, and the alleged statements do not fall within any exception; 4) the seventh cause of action, alleging extortion, is not viable in light of the fact that New York does not recognize a private cause of action for extortion; and 5) the first through fifth, and eighth through tenth, causes of action must also be dismissed because they fail adequately to allege the elements of those causes of action.

Plaintiff opposes Defendants' motion submitting, *inter alia,* that 1) many of the attachments to Defendants' Affirmation in Support are "devoid of evidentiary substance" (Ds' Memorandum of Law in Opp. at p. 14) and do not constitute documentary evidence that resolves Plaintiff's claims as a matter of law; 2) Plaintiff has sufficiently alleged that Defendants acted with malice and, therefore, has overcome any privilege available to Defendants; 3) Defendants' conduct is not protected by the *Noerr-Pennington* doctrine, in part because Plaintiff has adequately alleged facts making the "sham" exception to that doctrine applicable to the Instant Action; and 4) Defendants have adequately alleged the elements of the causes of action in the Complaint.

### RULING OF THE COURT

### A.  Standards for Dismissal

A complaint may be dismissed based upon documentary evidence pursuant to CPLR § 3211(a)(1) only if the factual allegations contained therein are definitively contradicted by the evidence submitted or a defense is conclusively established thereby. *Yew Prospect, LLC v. Szulman,* 305 A.D.2d 588 (2d Dept. 2003); *Sta-Bright Services, Inc. v. Sutton,* 17 A.D.3d 570

(2d Dept. 2005). A motion interposed pursuant to CPLR §3211 (a)(7), which seeks to dismiss a complaint for failure to state a cause of action, must be denied if the factual allegations contained in the complaint constitute a cause of action cognizable at law. *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268 (1977); *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144 (2002). When entertaining such an application, the Court must liberally construe the pleading. In so doing, the Court must accept the facts alleged as true and accord to the plaintiff every favorable inference which may be drawn therefrom. *Leon v. Martinez*, 84 N.Y.2d 83 (1994). On such a motion, however, the Court will not presume as true bare legal conclusions and factual claims which are flatly contradicted by the evidence. *Palazzolo v. Herrick, Feinstein*, 298 A.D.2d 372 (2d Dept. 2002). When evidentiary material is considered, the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one. *Gershon v. Goldberg*, 30 A.D.3d 372, 373 (2d Dept. 2006), citing *Doria v. Masucci*, 230 A.D.2d 764, 765 (2d Dept. 1996), app. den., 89 N.Y.2d 811 (1997), quoting *Guggenheimer*, 43 N.Y.2d at 275. This entails an inquiry into whether or not a material fact claimed by the pleader is a fact at all and whether a significant dispute exists regarding it. *Id.*

B. *Noerr-Pennington* Doctrine

The First Amendment to the Federal Constitution provides that Congress may make no law abridging the right of the people peaceably to assemble and to petition the government for a redress of grievances. U.S. Const. Amend. 1. The New York Constitution similarly provides that no law may be passed abridging the rights of the people peaceably to assemble and to petition the government or any department thereof. N.Y. Const. Art. I, § 9. Protection of the right of peaceable assembly from state infringement is assured, not only by the state Constitutional provision, but also by the Due Process Clause of the 14th Amendment. *Hague v. Committee for Indus. Organization*, 307 U.S. 496 (1939); *Herndon v. Lowry*, 301 U.S. 242 (1937).

The *Noerr-Pennington* doctrine, which was established by the United States Supreme Court's holdings in *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), *reh. den.*, 365 U.S. 875 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), prohibits interference with the right to petition the government. *See also Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101 (2d Dept. 2000) (although doctrine first arose in antitrust field, courts have expanded it to protect First Amendment petitioning

of the government from claims brought under State and Federal Law).

Although the doctrine initially arose in the context of lobbying for legislative action, it was subsequently expanded to include activities aimed at the executive and judicial branches of government. *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). In applying the doctrine to litigation activities, the United States Supreme Court has reasoned that "[c]ertainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transp. Co., supra,* at 510. *Noerr-Pennington* protection also shields from liability non-judicial acts incidental to litigation, such as a prelitigation 'threat letter.' *Primetime 24 Joint Venture v. National Broadcasting Company*, 219 F.3d 92, 100 (2d Cir. 2000); *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). In addition, as required by agency principles, *Noerr-Pennington* protection shields the attorneys of the petitioning party. *Alfred Weissman Real Estate, Inc.*, 268 A.D.2d at 105-06.

The protection provided by the *Noerr-Pennington* doctrine, however, is not absolute. Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983). Thus, immunity under the *Noerr-Pennington* doctrine does not apply to litigation involving unethical conduct in the setting of the adjudicatory process, or a pattern of baseless, repetitive claims. *Alternative Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 331 (E.D.N.Y. 2009), quoting *California Motor Transp. Co.*, 404 U.S. at 512-513.

The courts have also recognized exceptions to the *Noerr-Pennington* doctrine for activity that is found to be a "sham," or is "corrupt." These principles were succinctly explained in *Hamilton v. Accu-Tek*, 935 F. Supp. 1307, 1317 (E.D.N.Y. 1996):

> First, efforts to influence government are not protected where they are found to be a 'sham' to disguise what is otherwise nothing more than an attempt to directly injure a competitor and the political actor has no real interest in the outcome. The Supreme Court has recognized that, by definition, a successful effort to influence governmental action cannot be considered a sham. Second, courts have declined to invoke the protection of *Noerr-Pennington* where the political activity involved illegal, corrupt or unethical means.

*Id.* at 1317 (citations and internal quotations omitted)

8

The "sham" exception exists for situations in which persons use the governmental process, as opposed to the outcome of that process, as an injurious weapon. A "sham" situation involves a defendant whose activities are "not genuinely aimed at procuring favorable government action," not one "who genuinely seeks to achieve his governmental result, but does so through improper means." *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 380 (1991) (internal citations omitted). Ultimately, the scope of the sham exception depends on the type of governmental entity involved. *Kottle*, 146 F.3d at 1060. In the context of litigation before a judicial body, the evidence of injurious intent behind the use of the process, as opposed to the outcome of the process, cannot alone "transform otherwise legitimate activity into a sham." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 59 (1993). Recognizing the difficulty of separating legitimate suits from suits brought purely to inflict injury through the litigation process, and the potential chilling effect on legitimate litigation, the Supreme Court has reasoned that "the sham exception contains an indispensable objective component," *id.* at 58, holding as follows:

> If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and ... the sham exception must fail. Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

*Id.* at 60 (footnote omitted)

C. Abuse of Process

In New York, a malicious abuse-of-process claim lies against a defendant who 1) employs regularly issued legal process to compel performance or forbearance of some act, 2) with intent to do harm without excuse of justification, and 3) to obtain a collateral objective that is outside the legitimate ends of the process. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003), quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).

D. Civil Rights Law § 74

New York's Civil Rights Law §74 states, in pertinent part, as follows:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

The purpose of Civil Rights Law § 74 is the protection of reports of judicial proceedings

9

which are made in the public interest. *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969). *Accord, Branca v. Mayesh*, 101 A.D.2d 872 (2d Dept. 1984), *aff'd*, 73 N.Y.2d 994 (1984).

A narrow judicially-created exception to the statutory protection afforded by New York Civil Rights Law §74 exists for litigation that is maliciously commenced as a device to protect a later-published defamatory report concerning the litigation. *Williams*, 23 N.Y.2d at 599. The exception requires an allegation that the action was brought *maliciously* and *solely* for the purpose of later defaming that party. *See Branca*, 101 A.D.2d at 873.

### E. The Donnelly Act

N.Y. Gen. Bus. Law § 340 *et seq.*, known as the Donnelly Act, was modelled on the Federal Sherman Act of 1890, and therefore should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result. *X.L.O. Concrete Corp. v. Rivergate Corp.*, 83 N.Y.2d 513, 518 (1994), citing *People v. Rattenni*, 81 N.Y.2d 166, 171 (1993), quoting *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335 (1988).

The federal antitrust laws do not regulate the conduct of private individuals in seeking anticompetitive action from the government. *City of Columbia*, 499 U.S. at 379-80. The sham exception to *Noerr* encompasses situations in which people use the governmental process, as opposed to the outcome of that process, as an anticompetitive weapon. *Id.* at 380.

### F. Application of these Principles to the Instant Action

Pursuant to the *Noerr-Pennington* doctrine, GEICO and its attorneys, as agents, have the right to petition their government for relief, in this case by filing the Federal Actions. Moreover, as set forth in more detail below, the exceptions to the *Noerr-Pennington* doctrine are not present here. Given that RPR bases its first through fifth and eighth through tenth causes of action entirely on the allegations made by GEICO and its attorneys in the two Federal Actions, and the Court's conclusion that these allegations are constitutionally protected under *Noerr-Pennington*, the Court concludes that dismissal of RPR's first through fifth and eighth through tenth causes of action is mandated.

Plaintiff has failed submit evidentiary facts establishing that the petitions at issue, specifically the Green and One Best Complaints, fall within the "sham" exception to the doctrine and that the claims satisfy the objective, or subjective, elements of the sham exception. Indeed, Plaintiff has not demonstrated that the Federal Actions were "objectively baseless." Plaintiff has

failed to establish that GEICO knew it had no chance of success in the Green and One Best Actions, *In re Fresh Del Monte Pineapple Antitrust Litigation*, 2007 U.S. Dist. LEXIS 1372 (S.D.N.Y. 2007); *Professional Real Estate Investors, Inc.*, 508 U.S. at 60. Rather, the submissions before the Court, including the deposition transcripts of Drs. Beinart and Green, lead the Court to the conclusion that there was an objective basis for the claims pleaded in the Federal Actions.

The Court is unpersuaded by Plaintiff's argument that, as the Defendants' "petitioning" activity consisted of the filing of knowingly false and spurious claims which lacked a reasonable expectation of success, the objective element of the sham exception has been satisfied. The Court is informed by *Tuosto v. Philip Morris USA Inc.*, 2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. 2007), in which the court noted that "[n]otwithstanding the [']unethical['] and [']mere sham['] exceptions, *Noerr Pennington* protection has been extended to all advocacy intended to influence government action, including to allegedly false statements." *Id.* at * 15. Based on these standards, the *Tuosto* court held that "[e]ven statements that may 'fall[] far short of the ethical standards generally approved in this country' are protected by the *Noerr Pennington* doctrine if they are made in the course of petitioning the government. *Id.* at ** 15-16, quoting *Eastern R. R. Presidents Conference*, 365 U.S. at 140. Indeed, even lobbying activities that are unethical or result in deception are not actionable under the Noerr-Pennington doctrine. *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y. 2004).

Here, the allegations in the Complaint fail, on their face, to allege and otherwise establish evidentiary facts to satisfy the objective element of the sham exception to the Defendants' filing of the Federal Actions. Having failed to establish that the Federal Actions were objectively meritless, this Court need not examine Defendants' subjective motivation in bringing those suits. *Professional Real Estate Investors, Inc.*, 508 U.S. at 60.

Plaintiff's reliance on the First Department case of *Posner v. Lewis*, 80 A.D.3d 308 (1st Dept. 2010) is misplaced. Plaintiff submits that the *Posner* court held that *Noerr-Pennington* did not bar tortious interference and prima facie tort claims where the motivation for governmental petition was alleged to be malicious and vindictive, particularly at the CPLR § 3211(a) motion stage. This is a misreading and misapplication of *Posner*.

The *Posner* court stated, in pertinent part, as follows:

Nor does the *Noerr-Pennington* doctrine * * * mandate dismissal at this procedural stage. Pursuant to this doctrine, "citizens who petition the government for governmental action

11

favorable to them cannot be prosecuted under the antitrust laws" * * *Plaintiff contends that defendants sought action by the Board that, while detrimental to plaintiff, was not favorable to defendants, who had no personal interest in the outcome of the tenure determination since they did not reside in the District and did not have any children there. Thus, as the motion court found, it is far from clear that the *Noerr-Pennington* doctrine applies here, where "the motivation for such communications was vindictive and arose from personal animus unrelated to any apparent actual concern about the operation of government."

*Id.* at 316.

As the cited language makes clear, the *Posner* defendants had no personal interest in the outcome of the tenure determination at issue, because they did not reside in the district and did not have children there. By contrast, GEICO, as well as its attorneys (which are its agents), clearly have a "personal interest" in the outcome of the underlying Green and One Best suits.

In light of Plaintiff's failure to demonstrate that the Federal Actions had no chance of success, the sham exception to the *Noerr-Pennington* doctrine does not apply. Therefore, the Court dismisses Plaintiff's causes of action for tortious interference with business relationships, tortious interference with prospective business relationships, prima facie tort, and fraud in light of the Court's conclusion that those causes of action are barred by the *Noerr-Pennington* doctrine.

The Court also dismisses Plaintiff's fourth cause of action for abuse of process based on the Court's determination that Plaintiffs have not demonstrated that the Defendants used the legal process without any basis or reasonable expectation of success. Further, there is no indication that the Defendants used the legal process to obtain a collateral advantage. Rather, Defendants pursued the Federal Actions against Plaintiff to seek relief for RPR's role in connection with fraudulent billing and improper recovery of payment for duplicative claims, relief that is entirely appropriate.

Turning to the plaintiff's eighth cause of action for intentional deceit under Judiciary Law §487 against Defendants Spina, Levy and Rivkin Radler, this Court finds that the policy behind the *Noerr-Pennington* doctrine compels the dismissal of this cause of action as well. The crux of Plaintiff's eighth cause of action is that Spina, Levy and Rivkin are guilty of deceit and collusion in bringing "false and frivolous claims" against the Plaintiff (Compl. at ¶¶ 184-185). RPR alleges that these Defendants conspired to bring false and frivolous lawsuits against the Plaintiff for the purpose of putting it out of business and seeking to allow GEICO to avoid making payments in connection with legitimate no-fault claims (*id.* at ¶ 186). Plaintiff alleges that Levy signed the

12

Federal Complaints on behalf of Rivkin Radler (*id.* at ¶ 189).

The Court concludes that these allegations stem from GEICO's constitutionally protected petitioning activity. Where, as here, the conduct underlying the claims arises from GEICO and its attorneys petitioning the government through civil actions filed in the courts, and is effectively a fraud claim to which the *Noerr-Pennington* doctrine applies, this cause of action is also barred by the doctrine. Accordingly, the Court dismisses Plaintiff's eighth cause of action.

The Court also dismisses Plaintiff's ninth cause of action for restraint of trade under General Business Law § 340 (Donnelly Act) and the tenth cause of action for attorney's fees under General Business Law § 340(5) pursuant to the *Noerr-Pennington* doctrine. In its ninth and tenth causes of action, Plaintiff asserts that the actions taken by the GEICO Defendants have been intended to result in, and have resulted in, a restraint of the free exercise of Plaintiff's conduct of its lawful business and the furnishing of services by Plaintiff to its clients and potential clients (Compl. at ¶¶ 194-195).

Plaintiff frames its pleading by bringing suit against a private actor, GEICO, and its attorney, Rivkin. An antitrust claim, whether based on federal antitrust statutes or this state's Donnelly Act, fails because, as discussed above, the *Noerr-Pennington* doctrine provides that antitrust laws do not regulate the conduct of private individuals in seeking anticompetitive action from the government. In light of the Court's conclusion that Plaintiff has failed to establish its entitlement to the "sham" exception, this Court finds that the *Noerr-Pennington* doctrine precludes this cause of action as well.

In its sixth cause of action, sounding in slander/libel, Plaintiff alleges that Defendants have injured the reputation of Rapuzzi and RPR by publishing orally and in writing false and defamatory statements in *Newsweek, The Wall Street Journal,* various press releases and through a variety of various online news sources (Compl. at ¶ 163). RPR asserts that Defendants have falsely alleged that Rapuzzi and RPR are part of a RICO conspiracy involving RPR's fraudulent creation and generation of bills to be submitted to GEICO for services and supplies that were never rendered and subsequent pursuit of related claims against GEICO in litigation (*id.* at ¶ 164). Plaintiff claims that the statements made by Defendants constitute libel and slander per se because the false statements involve allegations "that tend to injure [RPR] in its business, trade or profession" (*id.* at ¶ 167).

Preliminarily, the Court notes that the allegations forming the basis of this cause of action do not specify what the alleged defamatory statement(s) was/were. Plaintiff has failed to demonstrate how it has satisfied the standard of particularity required by CPLR § 3016(a).

13

Accordingly, the defamation cause of action fails as a matter of law under CPLR § 3016(a). See *Petro Horbul v. Mercury Insurance Group*, 64 A.D.3d 682, 683 (2d Dept. 2009).

Furthermore, RPR bases its defamation claim on the publication, to the press, of the particulars of the Federal Complaints. These published reports of allegations contained in the Federal pleadings, however, are privileged pursuant to New York Civil Rights Law §74.

The Complaint does not allege that any publication varied from the allegations pleaded in the Federal Actions. Moreover, Plaintiff's allegations are based on Defendants' alleged publication, *after* filing, of the allegations made in the Federal Actions. The Complaint does not allege that the Federal Actions were brought solely to harm RPR, and the allegations in the Complaint as well as the documentary evidence establish that GEICO had valid business and economic reasons for pursuing the Federal Actions against RPR. Those valid reasons included RPR's filing of duplicative lawsuits, as well as unauthorized lawsuits on behalf of Total Global and Vista. Moreover, Total Global and Vista's consent to the Permanent Injunction and Order, discussed *supra*, supports the conclusion that GEICO did not file the Green Action solely to harm RPR, but rather to vindicate its rights. The record, including the detailed allegations in the Federal Complaint and relevant attachments in support, also supports the conclusion that GEICO did not file the One Best Action solely to harm RPR. Accordingly, the narrow exception to the Civil Rights Law §74 is inapplicable to the Instant Action, and the defamation cause of action is barred by the privilege afforded under New York Civil Rights Law §74.

Plaintiff claims in its seventh cause of action that Defendants' attempt to negotiate with RPR before filing the Federal Actions amounted to extortion. Extortion is a criminal offense that does not imply a private right of action. *Minnelli v. Soumayah*, 41 A.D.3d 388, 389 (1st Dept. 2007), *app. dism.*, 9 N.Y.3d 1028 (2008), citing, *inter alia*, *Niagara Mohawk Power Corp. v. Testone*, 272 A.D.2d 910 (4th Dept. 2000).

14

In light of the foregoing, the Court concludes that Plaintiff has failed to establish that it has a cause of action against the Defendants, and grants Defendants' motion to dismiss the Amended Complaint in its entirety.

All matters not decided herein are hereby denied.

This constitutes the decision and order of the Court.

DATED: Mineola, NY

June 17, 2011

ENTER

HON. TIMOTHY S. DRISCOLL

J.S.C.

15

# EXHIBIT 2

## Barry Levy

| From: | Steven Talan [stalan@bcfdlaw.com] |
|---|---|
| Sent: | Thursday, June 23, 2011 4:01 PM |
| To: | Barry Levy; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com |
| Cc: | eblodnick@bcfdlaw.com; tfazio@bcfdlaw.com |
| Subject: | GEICO v. One of the Best, et al |

**Attachments:** 20110623.Letter to Magistrate Levy.pdf

Counselors,

In light of Magistrate Levy's order for Plaintiff to file its stipulation of discontinuance by tomorrow, June 24, 2011, I suggest sending the attached letter with your consent.

Please let me know your thoughts, this afternoon.

Very truly yours,

Steven R. Talan, Esq.
Blodnick,Conroy, Fazio & Diglio, P.C.
1325 Franklin Avenue
Suite 555
Garden City, New York 11530
Telephone: 516-280-7105
Facsimile: 516-280-7102 *(Not For Service Of Litigation Papers)*
*NOTICE: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. The contents of this e-mail are confidential and subject to the attorney-client and work product privileges. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

# EXHIBIT 3

## Barry Levy

**From:** Barry Levy

**Sent:** Thursday, June 23, 2011 5:07 PM

**To:** 'Steven Talan'; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com

**Cc:** eblodnick@bcfdlaw.com; tfazio@bcfdlaw.com; Peter Contino; 'Matt Conroy'; Barry Levy

**Subject:** RE: GEICO v. One of the Best, et al

Steve:

We are prepared to conent to an extension but only for 15 days.  Please amend the letter accordingly.



Barry I. Levy, Esq.
Partner
926 RXR Plaza
Uniondale, New York 11556-0926
T 516.357.3000 | D 516.357.3149 | F 516.357.333
C 347.583.7982
barry.levy@rivkin.com

 Please do not print this email unless it is necessary.

**From:** Steven Talan [mailto:stalan@bcfdlaw.com]
**Sent:** Thursday, June 23, 2011 4:01 PM
**To:** Barry Levy; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com
**Cc:** eblodnick@bcfdlaw.com; tfazio@bcfdlaw.com
**Subject:** GEICO v. One of the Best, et al

Counselors,

In light of Magistrate Levy's order for Plaintiff to file its stipulation of discontinuance by tomorrow, June 24, 2011, I suggest sending the attached letter with your consent.

Please let me know your thoughts, this afternoon.

Very truly yours,

Steven R. Talan, Esq.
Blodnick,Conroy, Fazio & Diglio, P.C.
1325 Franklin Avenue
Suite 555
Garden City, New York 11530
Telephone: 516-280-7105
Facsimile: 516-280-7102 *(Not For Service Of Litigation Papers)*
*NOTICE: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. The contents of this e-mail are confidential and subject to the attorney-client and work product privileges. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

# EXHIBIT 4

## Barry Levy

**From:** Thomas R. Fazio, Esq. [tfazio@bcfdlaw.com]

**Sent:** Thursday, June 23, 2011 5:18 PM

**To:** Barry Levy; 'Steven Talan'; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com

**Cc:** eblodnick@bcfdlaw.com; Peter Contino; 'Matt Conroy'

**Subject:** RE: GEICO v. One of the Best, et al

Barry-

After discussing it we have changed our mind and no longer desire to file the letter. Thank you for your time.

Tom

---

**From:** Barry Levy [mailto:Barry.Levy@rivkin.com]
**Sent:** Thursday, June 23, 2011 5:07 PM
**To:** 'Steven Talan'; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com
**Cc:** eblodnick@bcfdlaw.com; tfazio@bcfdlaw.com; Peter Contino; 'Matt Conroy'; Barry Levy
**Subject:** RE: GEICO v. One of the Best, et al

Steve:

We are prepared to conent to an extension but only for 15 days. Please amend the letter accordingly.


RIVKIN RADLER
ATTORNEYS AT LAW

Barry I. Levy, Esq.
Partner
926 RXR Plaza
Uniondale, New York 11556-0926
T 516.357.3000 | D 516.357.3149 | F 516.357.333
C 347.583.7982
barry.levy@rivkin.com


Please do not print this email unless it is necessary.

---

**From:** Steven Talan [mailto:stalan@bcfdlaw.com]
**Sent:** Thursday, June 23, 2011 4:01 PM
**To:** Barry Levy; Max Gershenoff; Michael Sirignano; khenry@kenhenryesq.com
**Cc:** eblodnick@bcfdlaw.com; tfazio@bcfdlaw.com
**Subject:** GEICO v. One of the Best, et al

Counselors,

In light of Magistrate Levy's order for Plaintiff to file its stipulation of discontinuance by tomorrow, June 24, 2011, I suggest sending the attached letter with your consent.

6/24/2011

Please let me know your thoughts, this afternoon.

Very truly yours,

Steven R. Talan, Esq.
Blodnick,Conroy, Fazio & Diglio, P.C.
1325 Franklin Avenue
Suite 555
Garden City, New York 11530
Telephone: 516-280-7105
Facsimile: 516-280-7102 *(Not For Service Of Litigation Papers)*
*NOTICE: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. The contents of this e-mail are confidential and subject to the attorney-client and work product privileges. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

Please Visit Our New Website at www.rivkinradler.com

NOTICE: This message may contain information that is confidential or privileged. If you are not the intended recipient, please advise the sender immediately and delete this message.
See: http://www.rivkinradler.com/email-disclaimer.cfm for further information on confidentiality.

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1382 / Virus Database: 1513/3721 - Release Date: 06/23/11